**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 9, 2018[*]
Decided March 12, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-1653

| | |
|---|---|
| JOSE ANTONIO COSSIO, JR., *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 15 C 7746 |
| JOHN D. TOURTELOT, *Defendant-Appellee.* | Edmond E. Chang, *Judge.* |

## O R D E R

Jose Cossio, Jr., a military veteran and former employee of Cook County, sued the County along with a state court judge, the Cook County Sheriff's Office, and several county officials. He alleged that they committed various constitutional violations and torts that led Cook County to terminate his employment for falsifying his military record on his employment application and for not cooperating with the county's

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

investigation into his military record. The defendants moved to dismiss the suit for failure to state a claim. The district court granted the motion with respect to Cossio's claims under federal law and declined to exercise supplemental jurisdiction over his state-law claims. In particular the court ruled that Circuit Judge John Tourtelot has judicial immunity from Cossio's federal claims. Cossio appealed but voluntarily dismissed his appeal against all of the defendants except the judge. Because we cannot conclude based solely on the complaint that judicial immunity shields Judge Tourtelot from Cossio's federal claims, we vacate the judgment for Judge Tourtelot.

The details in Cossio's amended complaint are relatively sparse. To understand his allegations, we look to the documents he attached to his original complaint because the parties do not dispute their contents and these details do not affect our analysis of his appeal. We accept as true all factual allegations in Cossio's amended complaint and draw all permissible inferences in his favor. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Roughly five years ago Cossio applied for and received a fleet manager position with the Cook County Bureau of Administration. In his application, he said that he was a veteran who had been honorably discharged and that he had not been convicted of any crimes. As part of his application, he also signed a form acknowledging that if were hired, he could be terminated for falsely reporting his criminal history.

One year later he appeared in the Circuit Court of Cook County for a hearing on a co-worker's petition for an order of protection against him. During the proceedings, Cossio's military history was "disclosed" by the complainant's lawyer. Ten years earlier, he had been discharged from the Air Force after being convicted of larceny, identity theft, and communicating a threat. According to Cossio, Judge Tourtelot, who was presiding, had been told during the hearing that Cossio worked for the County, and "warned [him] to be careful that 'no one finds out about this' and that it could affect his career." Cossio says that he "won" the case, but he does not specify when the judge issued his decision denying an order of protection.

About ten days after the hearing, an employee of the Cook County Sheriff's Office called the county's Department of Human Resources and "falsely stated that Cossio called [Judge] Tourtelot." Judge Tourtelot had reported to the Sheriff's Office that Cossio had called him on his personal phone; then, the Sheriff's Office passed along this information, in addition to its suspicion that Cossio improperly obtained the

judge's phone number through his county employment, to Human Resources. Cossio does not say whether the judge told the Sheriff's Office that Cossio's call to him was connected to a case before him. Cossio also charges Judge Tourtelot with reporting his military convictions to the Sheriff's Office, which shared the information with Human Resources. Cossio is clear that he "never called [Judge] Tourtelot."

The report from the Sheriff's Office led the Office of the Independent Inspector General to investigate. The investigation confirmed Cossio's military convictions, leading the Inspector General to recommend that the Bureau of Administration fire him. The Bureau accepted the recommendation and terminated Cossio's employment for falsifying his employment records and not cooperating with the investigation.

Cossio appealed his termination to the Cook County Employee Appeals Board. While his appeal was pending, he went to Judge Tourtelot's home to confront him about "the false allegations that he called [Judge] Tourtelot." According to Cossio, Judge Tourtelot told him "that the Sheriff's Office made the complaint and shouted that [he] should leave." Two months after this incident, the Board upheld Cossio's termination.

Around the time that the Board issued its decision, Cossio sued Judge Tourtelot and the other defendants in the Circuit Court of Cook County. Under 42 U.S.C. § 1983, Cossio alleged various violations of his constitutional rights and pleaded that the defendants committed several torts, including defamation. The defendants removed this case to federal court, where Cossio amended his complaint. He added additional constitutional and tort claims to his complaint, though for many of the counts he did not specify the particular defendants implicated. But regarding Judge Tourtelot, Cossio suggested that the judge reported Cossio's military convictions to the Sheriff's Office and falsely reported that Cossio had called him. He further alleged that Judge Tourtelot took this step as part of a conspiracy to violate Cossio's civil rights and deprive him of his property interest in his job:

> Defendants, acting in concert, agreed among themselves to make false allegations, disclose records without lawful authority, and harm Plaintiff[']s employment. . . . Defendants further agreed among themselves to provide false allegations that Jose Cossio called [Judge] John Tourtelot for the purpose of concealing their own wrongdoing and causing Plaintiff to be deprived his employment.

And he asserted that Judge Tourtelot conspired with the Sheriff's Office to "affect [his] employment by disclosing his military convictions by falsely stating that Cossio called [Judge] Tourtelot."

The defendants moved to dismiss the suit for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and asserted that judicial immunity prevented Cossio from suing Judge Tourtelot. In his response brief, Cossio disputed Judge Tourtelot's immunity. He also added new allegations, consistent with those in his amended complaint, that could be construed to raise a Fourth Amendment claim against the judge (he had already accused the other defendants of an unreasonable search). *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("[F]acts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint so long as they are consistent [with] the allegations in the complaint."). Cossio contended that Judge Tourtelot conspired with the Sheriff's Office to search unlawfully an electronic database for Cossio's military history during the protective-order case. Cossio also argued that Judge Tourtelot was not entitled to judicial immunity because his (false) report to the Sheriff's Office was not a judicial act, but an administrative one.

The district court granted the defendants' motion with respect to all of Cossio's federal claims and declined to exercise supplemental jurisdiction over Cossio's state-law claims. As to Cossio's claims under federal law against Judge Tourtelot, the district court ruled that the judge had judicial immunity that prevented him from being sued for reporting a supposed communication with Cossio to the Sheriff's Office. The court reasoned that Cossio's alleged call to the judge constituted an improper ex parte communication and therefore the judge's report of this call to the Sheriff's Office "was judicial in character." Cossio then moved to alter the judgment under Federal Rule of Civil Procedure 59(e), essentially arguing that the district court wrongly determined at the pleading stage that he had called the judge. The court denied the motion, emphasizing that it accepted as true his assertion that he never called the judge.

Cossio appealed, and we later granted his motion under Federal Rule of Appellate Procedure 42(b) to dismiss the appeal against all defendants except Judge Tourtelot.

In this court, Cossio raises two arguments. He first contends that he did not bring any claims under federal law against Judge Tourtelot and therefore the district court should not have decided that federal judicial immunity insulates the judge. He expresses concern that a state court will use the district court's judicial-immunity analysis to justify giving Judge Tourtelot immunity from his defamation claim.

Cossio is wrong on this point. The district court needed to evaluate whether Judge Tourtelot had judicial immunity because Cossio accused Judge Tourtelot of acts that he says violated his constitutional rights. The first count of his amended complaint expressly purports to be brought under § 1983 and is against all "Defendants." We discern at least two theories of relief under federal law that apply to the allegations against Judge Tourtelot: that he conspired to violate Cossio's civil rights and deprived him of his property interest in his job. And in Cossio's response to the motion to dismiss, he alleged facts that could be interpreted to raise another constitutional claim—that the judge violated or conspired to violate his Fourth Amendment rights through illegal searches. This is confirmed in his sur-reply to the motion to dismiss, in which he labels his "constitutional injury" as "conspiracy" and argues "Defendants have deprived him of his property interests in continued employment." And in his response he wrote that the defendants are "each liable jointly and severally [for] their actions." This, combined with the fact that all allegations in the amended complaint are incorporated into every count, demonstrates that, whatever Cossio says now, he accused Judge Tourtelot of violating and conspiring to violate his federal constitutional rights.

Moreover, Cossio's concern about the effect of the district court's decision is misplaced. This decision, applying the federal common law of absolute judicial immunity, has no preclusive effect on his state-law defamation claim because only state immunity law applies to this claim. *See Payne for Hicks v. Churchich*, 161 F.3d 1030, 1038 (7th Cir. 1998) (distinguishing between federal and state law of immunity and explaining that only federal law of immunity applies to federal claims).

Cossio next argues that the judge's call to the Sheriff's Office reporting the alleged lie that Cossio called him was not a judicial act and therefore is not covered by judicial immunity. Judicial immunity insulates judges from being sued except when a plaintiff sues a judge for (1) "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity," or (2) "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). To evaluate

whether judicial immunity applies, we consider "the nature and function of the act, not the act itself" and thereby determine "the particular act's relation to a general function normally performed by a judge." *Id.* at 13 (internal quotation marks omitted).

In analyzing judicial immunity here, it does not matter that Judge Tourtelot allegedly fabricated the report of Cossio's call because we do not consider the judge's action itself, but its nature and function. If the judge did report an improper ex parte contact, then that would be, as the district court held, a judicial function. *See Brookings v. Clunk*, 389 F.3d 614, 621 (6th Cir. 2004) (judicial immunity applies when judge reports litigant misconduct). We would not look behind the nature and function of the act to determine whether the judge's report was true. *See Mireles*, 502 U.S. at 12–13. Cossio is therefore incorrect to contend that the falsity of Judge Tourtelot's statement precludes the application of judicial immunity.

Nevertheless, taking the allegations in the complaint as true and drawing all permissible inferences in Cossio's favor, we cannot conclude that Judge Tourtelot has judicial immunity. The judge might not have been acting in a judicial capacity when he called the Sheriff's Office to (allegedly) falsely report a call from Cossio. We do not know, based on the complaint alone, what if anything Judge Tourtelot told the Sheriff's Office beyond that Cossio had called him, had been convicted of crimes in the past, and had lied on his employment application. Not every reasonable inference from the complaint would make a simple telephone call a judicial act. Cossio does not specify whether his protective-order case before Judge Tourtelot was ongoing at the time the judge says Cossio made the call. Nor does Cossio allege that the judge reported that Cossio was or had been a litigant before him.

If the judge was reporting the misconduct of a county employee (falsifying his employment application) to the Sheriff's Office, and not reporting an ex parte contact with a litigant, then the telephone call would have been an action taken by a judge, but not a "judicial act." *See Forrester v. White*, 484 U.S. 219, 229–30 (1988) (distinguishing between administrative acts not covered by judicial immunity and judicial actions shielded by judicial immunity). Actions taken by judges relating to employment are not covered by judicial immunity because they are administrative in nature. *See id.* True, Judge Tourtelot was not the hiring authority, but Cossio's complaint plainly accuses Judge Tourtelot and the other defendants of conspiring to deprive him of his property interest in his employment.

Further, with respect to Judge Tourtelot's report of Cossio's military convictions to the Sheriff's Office—something that Cossio *does* allege—a judge does not act in his or her judicial capacity by telling law enforcement of a false statement that a litigant made outside of court proceedings. Such a communication is "a ministerial act which might as well have been committed to a private person as to a judge," is not an act "normally performed by a judge," and is not a situation in which "the parties dealt with the judge as judge." *Lowe v. Letsinger*, 772 F.2d 308, 312 (7th Cir. 1985) (identifying factors that "[c]ourts have considered . . . in determining whether an act is judicial"). And we have not found support in the law for the proposition that the doctrine of judicial immunity applies simply because the plaintiff's relationship to the judge was, as the district court said, "formed" in the context of a courtroom.

Because it is not clear from the face of the complaint that Judge Tourtelot has judicial immunity from Cossio's federal claims, we VACATE the district court's judgment for Judge Tourtelot and REMAND for further proceedings consistent with this order.